UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| JESSICA ADAMS, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case No. |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| SELECT QUOTE, INC. | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

CARLA D. AIKENS, P.L.C.
Carla D. Aikens (P69530)
Austen Shearouse (P84852)
615 Griswold Street, Suite 600
Detroit, Michigan
carla@aikenslawfirm.com
austen@aikenslawfirm.com

## COMPLAINT

Plaintiff JESSICA ADAMS, by and through her attorneys assert there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence

## JURY DEMAND

COMES NOW Plaintiff Jessica Adams and hereby demands trial by jury. As for his Complaint against Defendant, Plaintiff, Jessica Adams, states that:

## PARTIES AND JURISDICTION

1.      At all times relevant to this Complaint, Plaintiff Jessica Adams was a resident of Flint, Michigan.

2.      Defendant Select Quote, Inc., has a headquarters in Overland Park, Kansas, with a registered agent located at 186 N Main Street, 2nd Floor, Suite 1, Plymouth, Michigan.

3.      Venue is proper  in  this  Court, because the violations Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

4.      This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## FACTUAL ALLEGATIONS

6.      Plaintiff (hereinafter referred to as "Ms. Adams") is a woman with a disability who is employed by the Defendant.

7.      Ms. Adams' employment began on or about November 10, 2021, as a Sales Agent.

8.      At the start of Ms. Adams' employment, she spent a month and a half training and/or testing for her license to sell insurance.

2

9.      This along with the fingerprinting and I-9 cost Ms. Adams' $600 out of pocket.

10.     When Ms. Adams was first contacted about the job, she was told her pay would be $18 per hour with $50 as commission per sale, since she was a permanent employee, with no "cold calling."

11.     Despite being told she was training for a Sales Agent position, Ms. Adams actually received training to be an enrollment specialist.

12.     After roughly two months of enrollment specialist training, Defendant informed Ms. Adams that her commissions would only be $10.00 until she got started in sales training.

13.     Upon information and belief, Ms. Adams never received the full and proper training.

14.     In March of 2020, after completing months of training, Defendant next informed Ms. Adams there had been a typo in her offer letter and that she would be only getting paid minimum wage.

15.     Upon information and belief, employees who spoke out against the hidden pay change were fired around December of 2021.

16.     Further, Ms. Adams experienced pressure from supervisors and/or agents of Defendant to sell plans not in the best interests of the clients.

17.     Ms. Adams received further instructions not to inform clients of adversary actions when switching plans or modify enrollments improperly.

18.     During this same period, Defendant sent multiple "offer letters" to Ms. Adams further lowering her wage to the minimum while cutting her commissions to $15 because of a "tiered" system.

19.     While all of these changes occurred, Ms. Adams informed Defendant about her anxiety and depression.

20.     Ms. Adams went to a doctor's appointment on January 31, 2022, and went on leave due to the conditions mentioned.

21.     Ms. Adams had a confirmed medical diagnosis that required appropriate treatment.

22.     Shortly after taking medical leave as recommended by her doctor, Ms. Adams began to receive emails about "occurrences" at work from her manger

23.     Ms. Adams attempted to return to work on February 7, 2022, and experienced vomiting with chest pains.

24.     After informing her manager about her health, an ambulance was called and Ms. Adams clocked out.

25.     Ms. Adams submitted another request for time off until February 17, 2022.

26.     Upon information and belief, Ms. Adams had been told by supervisors that no breaks could be taken from 8:00 am to 1:00 pm.

27.     Defendant further did not allow Ms. Adams to take any breaks, encouraged her to not take lunch, and to work off the clock/after hours without pay.

28.     Upon information and belief, Ms. Adams supervisors' stated during a Zoom meeting that people who brought up pay concerns would be fired.

29.     Ms. Adams brought up concerns with the ever-changing pay rates, as well as her need for accommodation for her recognized disability.

30.     Ms. Adams met with members of Defendant's human resources department to discuss both her pay discrepancies and her disability.

31.     However, Ms. Adams was not taken seriously, and her disability was mocked by the attendees of these meetings, who stated she was "having another episode" or otherwise dismissing her issues.

32.     Ms. Adams continued to seek appropriate accommodation, but Defendant did not respond to her requests.

33.     Ms. Adams never received appropriate pay nor accommodation, and was forced to resign from the position on or about May 5, 2022, as it was not possible for her to continue in her job under the circumstances.

34.    Ms. Adams filed a charge with the EEOC, Charge No. 471-2023-02632 and received a Right to Sue on March 14, 2023.

<u>**COUNT I**</u>
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION Of TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")**

35.    Plaintiff hereby incorporates by reference the preceding paragraphs of the Complaint, as if fully set forth herein.

36.    At all material times, Plaintiff was an employee, and Defendant was an employer, covered by and within the meaning of the ADA, 42 U.S.C. § 12101, et seq.

37.    A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

38.    Plaintiff has been diagnosed with anxiety and depression and as a result, Plaintiff has a disability within the meaning of the ADA.

39.    Plaintiff's disability under the ADA is qualified, meaning that with reasonable accommodation, she can perform the essential functions and duties of her job.

40.    Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application

6

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

41.     As outlined throughout this Complaint, Plaintiff was discriminated against on the basis of her disability in regard to compensation, leave, and other terms, conditions, and privileges of employment.

42.     Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

43.     But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

44.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

45.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

46.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT – DISABILITY DISCRIMINATION

47.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

48.     Plaintiff brings this suit under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1201, et seq.

49.     Plaintiff claims Defendant discriminated against her by not accommodating her disability.

50.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

51.     At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

52.     At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job.

53.     Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

54.     Plaintiff's disabilities are mental and emotional in nature.

55.     Plaintiff requested to time off to receive necessary treatment.

56.     At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to

accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to take time off to receive necessary treatment and/or moving Plaintiff to a different position.

57.     At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

58.     Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

59.     At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

60.     At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for her requesting an accommodation.

61.     Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of her disability.

62.     Defendant failed to provide Plaintiff with a reasonable accommodation.

63.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

64.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

65.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

## <u>COUNT III</u>
## RETALIATION ON THE BASIS OF DISABILITY IN VIOLATION Of TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")

66.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

67.     At all material times, Defendant was an employer covered by, and within the meaning of, the ADA.

68.     At all material times, Plaintiff was an employee covered by, and within the meaning of, the ADA.

69.    Defendant's conduct, as alleged herein, violated the ADA, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

70.    A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

71.    Plaintiff engaged in protected activity, including but not limited to when she reported that she needed an accommodation, and when she repeatedly met with supervisors and HR to discuss the retaliation and discrimination she felt due to her disability.

72.    Defendant's, through their employees, had knowledge that Plaintiff engaged in protected behavior because Plaintiff gave direct notice to her supervisors.

73.    Plaintiff's engagement subjected her to further adverse treatment as set forth in the statement of facts and the threat of being terminated for voicing her concerns.

74.    Plaintiff was never offered appropriate accommodation, despite her attempts to secure one.

75.    Defendant's and their agents lowered Plaintiff's compensation several times after her complaints began, and eventually terminated her.

76.    Defendant's and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

77.    Plaintiff notified Defendant's and their agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

78.    As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

79.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

80.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")

81.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

82.    Plaintiff brings this suit under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL § 37.1201, et seq.

83.    Plaintiff claims Defendant discriminated against her by not accommodating her disability.

84.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

85.    At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

86.    At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job as Electronics Specialist.

87.    Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that she had a physical impairment that substantially limits one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

88.    Plaintiff's disabilities are mental and physical in nature.

89.    A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

90.    Plaintiff engaged in protected activity, including but not limited to when she reported that she needed an accommodation, and when she repeatedly met with supervisors and HR to discuss the retaliation and discrimination she felt due to her disability.

91.    Defendant's, through their employees, had knowledge that Plaintiff engaged in protected behavior because Plaintiff gave direct notice to her supervisors.

92.    Plaintiff's engagement subjected her to further adverse treatment as set forth in the statement of facts and the threat of being terminated for voicing her concerns.

93.    Plaintiff was never offered appropriate accommodation, despite her attempts to secure one.

94.    Defendant's and their agents lowered Plaintiff's compensation several times after her complaints began, and eventually terminated her.

95.    Defendant's and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

96.    Plaintiff notified Defendant's and their agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

97.    As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

98.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

99.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## FAILURE TO  PAY MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 201, et seq. ("FLSA")

100.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

101.    At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the FLSA.

102.    Section 206 of the FLSA, 29 U.S.C. § 206(a)(1)(C), mandates that employers pay all employees engaged in commerce or in the production of goods for commerce, minimum wages for their work in an amount set by federal law. Section 218 of the FLSA, 29 U.S.C. §218(a), provides that employers pay such minimum wages as established by state law, should it be higher than the federal minimum.

103.    Plaintiff was present and working past the time she was paid, and Defendant would force her to continue working until it was finished, while at the

15

same time forcing her to stop receiving compensation at the end of her scheduled shift.

104.   Moreover, Defendant would not allow Plaintiff to take breaks, even though, upon information and belief, these were not included in her pay.

105.   Because of Defendant's unlawful failure and refusal to pay Plaintiff minimum wages, Plaintiff is entitled, pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216(b), to recover her unpaid minimum wages, including interest and liquidated damages thereon, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

106.   Defendant's willfully, intentionally, and with reckless disregard failed to pay Plaintiff the minimum wage for all her hours worked in violation of the FLSA.

107.   Defendant would not, and did not, compensate Plaintiff with her wages earned for those hours she was forced to work in violation of the FLSA.

108.   Defendant, by and through its agents, had actual knowledge, and in fact directed and mandated that Plaintiff not be paid and not take breaks.

109.   Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI
## VIOLATION OF FLSA OVERTIME LAW

110.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

111.    At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the FLSA.

112.    29 U.S.C. 207(a)(1) states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

113.    Here, Plaintiff routinely was forced to work longer than the number of hours she was paid.

114.    Accordingly, for the violations of Defendant that existed after 40 hours, Defendant also violated the FLSA overtime laws.

115.    Because of Defendant's unlawful failure and refusal to pay Plaintiff her overtime wages, Plaintiff is entitled, pursuant to § 216(b) of the FLSA, 29 U.S.C., to recover her unpaid minimum wages, including interest and liquidated damages thereon, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

116.    Defendant willfully, intentionally, and with reckless disregard failed to pay Plaintiff the overtime wage for all her hours worked that were not compensated and worked in excess of 40 hours.

117.   Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT VII**
**RETALIATION IN VIOLATION OF FLSA**

118.   Plaintiff incorporates by reference all allegations in the preceding paragraphs.

119.   At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the FLSA.

120.   The FLSA makes it illegal for an employer to take an adverse action against an employee for making a complaint about pay.

121.   As stated in the statement of facts, Plaintiff complained to her supervisors about the manner in which Defendant was paying her, including not paying her at all, which was protected activity under the FLSA.

122.   Defendant terminated Plaintiff for engaging in the protected activity, including complaining about her pay, including underpayment and failure to pay her at all for hours worked.

123.   Because of Defendant's unlawful retaliation in the form of termination of Plaintiff for engaging in protected activity, Plaintiff is entitled to recover her unpaid minimum wages, including interest and liquidated damages thereon, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

124.    Defendant willfully, intentionally, and with reckless disregard retaliated against Plaintiff by terminating her for engaging in the aforementioned protected activity.

125.    Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, JESSICA ADAMS, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1.    Compensatory damages in whatever amount to which Plaintiff is entitled;

2.    Exemplary damages in whatever amount which Plaintiff is entitled;

3.    An award of lost wages and the value of fringe benefits, past and future;

4.    An award of interest, costs, and reasonable attorney fees; and

5.    An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  June 12, 2023

> Respectfully Submitted,
> */s/ Carla D. Aikens*
> Carla D. Aikens (P69530)
> Austen Shearouse (P84852)
> CARLA D. AIKENS, P.C.

*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com